UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| CARLTON E. MCINTOSH, SR., ) | |
| ) | |
| Plaintiff, ) | Civil No. 15-56-HRW |
| ) | |
| V. ) | |
| ) | |
| LADONNA THOMPSON, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Officer Jonathan Dingus has filed a motion seeking summary judgment upon the complaint filed by plaintiff Carlton E. McIntosh, Sr. [D. E. No. 12] McIntosh has filed a response to the motion, to which Dingus has replied. [D. E. Nos. 14, 15] This matter is therefore ripe for decision.

I

McIntosh is an inmate presently confined at the Luther Luckett Correctional Complex in LaGrange, Kentucky. Proceeding without counsel, McIntosh filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that Officer Dingus caused him injuries as a result of reckless driving. [D. E. No. 1] Specifically, McIntosh alleged that on August 4, 2014, Dingus was driving the van that transported him from the Northpoint Training Center to the Eastern Kentucky Correctional Complex ("EKCC"). McIntosh was restrained by leg shackles,

1

handcuffs, and a belly chain connected to a "black box" restraint at his waist. McIntosh alleges that Dingus refused to fasten McIntosh's seatbelt for him and that during the trip Dingus was speeding and driving recklessly, at one point coming to an abrupt halt. Because McIntosh's arms and hands were restrained and he was not belted into the seat, he was thrown forward into the security glass and iron roll bar separating the passenger compartment from the driver, causing injury to his shin and leg. [D. E. No. 1 at pp. 2-3] McIntosh further alleges that he suffered a heart attack three weeks later on August 25, 2014, and was transferred to the University of Kentucky Hospital for urgent medical care. At the hospital, he was diagnosed with a pulmonary embolism caused by deep vein thrombosis. McIntosh states that when he told the doctor about his recent leg injury, the doctor allegedly told him that the injury "was likely the cause and source of the embolism…" *Id.* at p. 4. McIntosh claims that Officer Dingus exhibited deliberate indifference to his health and safety by failing to secure his seatbelt and by driving erratically.

McIntosh states that he filed grievances regarding these events between September 12 and September 19, 2014. [D. E. No. 1 at 9] However, the grievance forms he attached to his complaint relate to the medical care he received, not to his claims regarding Officer Dingus's conduct. [D. E. No. 1-1 at pp. 1-10] McIntosh gives contradictory indications with respect to other grievances he filed or wished to file, on the one hand stating that his grievances were denied as having been filed

2

outside the five-day window permitted by the grievance procedure, on the other hand stating that he "was not given provisions" to file a grievance when he was in EKCC's Hospital Unit. [D. E. No. 1 at 9]

Officer Dingus seeks summary judgment upon McIntosh's claims against him on the ground that McIntosh failed to exhaust his administrative remedies as required by federal law. [D. E. No. 12-1 at 2-4] Dingus has included the affidavit of John Dunn, Central Office Ombudsman for the Kentucky Department of Corrections ("KDOC"), who testifies that McIntosh never filed any grievance regarding his allegations of misconduct by Dingus. [D. E. No. 12-4] Dingus further notes that while McIntosh claimed in his complaint that he was unable to obtain a grievance form [D. E. No. 1 at 9], this did not occur until McIntosh was placed in EKCC's Hospital Unit, which was weeks after Officer Dingus's alleged misconduct on August 4, 2014, and after McIntosh had gone through routine medical processing upon his arrival at EKCC. [D. E. No. 12-1 at 5-6]

In his three-sentence response, McIntosh alleges for the first time that on August 5, 2014, he attempted to obtain a grievance form at EKCC's law library, but that the officer in charge would not give him a grievance form because the incident did not occur at EKCC. [R. 14 at 1] Officer Dingus replies that McIntosh could have readily obtained a grievance form from many other sources, including his

treatment officer ("CTO") and from the grievance aide assigned to his dorm. [D. E. No. 15 at 1-2]

## II

A motion for summary judgment under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F. 3d 580, 588 (6th Cir. 2014).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

4

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). If the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

In this case, Officer Dingus asserts the affirmative defense that McIntosh failed to properly and timely exhaust his administrative remedies. Federal law requires a prisoner wishing to challenge the manner in which his criminal sentence is being carried out to exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims

5

cannot be brought in court."). Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...", *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), the prisoner must file the initial grievance and any appeals within the required time frames.

A thorough review of McIntosh's complaint and the materials filed by Officer Dingus in support of his motion establish that the defendant is entitled to judgment as a matter of law. McIntosh readily admits that he did not file a grievance regarding Officer Dingus' alleged misconduct, but in his response alleges for the first time that prison staff at EKCC's law library failed to provide him with a grievance form on August 5, 2014. [D. E. No. 14 at 1] McIntosh's new allegation fails to provide justification for his failure to exhaust his administrative remedies for two reasons.

First, a party cannot create a genuine issue of material fact to avoid summary judgment merely by making new allegations that are inexplicably omitted from, materially inconsistent with, or contradict allegations previously set forth in a verified complaint or deposition testimony. Cf. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F. 3d 899, 907-08 (6th Cir. 2006); *Foster v. Americare Healthcare Servs., Inc.*, 150 F. Supp. 3d 868, 871-72 (S.D. Ohio 2015). There is no question that McIntosh's new allegation cannot be reconciled with his previous statements regarding his efforts to exhaust his claims. First, prison officials would not have denied McIntosh's grievance on the ground that it was more than five days after the events

complained of (as he stated in his complaint) if (as he now alleges) he attempted to obtain a grievance form on August 5, 2014 – one day after Officer Dingus' alleged misconduct. Second, in his complaint McIntosh clearly alleged that he was not provided the means to file a grievance "while in [EKCC's] Medical Hospital Unit [D. E. No. 1 at 9], whereas he now claims he sought to obtain a grievance form from prison staff in EKCC's law library. Because a party cannot be permitted to manufacture a *post hoc* explanation for his failure to file an inmate grievance based upon alleged facts materially at odds with those set forth in his own complaint, McIntosh has failed to provide legally-sufficient grounds to excuse his admitted failure to exhaust administrative remedies.

Second, even accepting as true McIntosh's assertion that he could not obtain a KDOC grievance form from the EKCC library, that explanation is both factually and legally insufficient to deem the exhaustion requirement satisfied. As a factual matter, Officer Dingus correctly notes that McIntosh had other readily-available sources from which to obtain a KDOC grievance form at the prison. [D. E. No. 15 at 1-2] As a legal matter, even if a "proper" or official grievance form is unavailable, the exhaustion requirement is not deemed satisfied unless the prisoner undertakes at least some additional and reasonable effort to invoke and pursue the inmate grievance process. Cf. *Jones v. Smith*, 266 F. 3d 399, 400 (6th Cir. 2001) (holding that prison counselor's implicit refusal provide inmate with grievance form did not

excuse exhaustion where the inmate "does not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form or to file a grievance without a form."). The fact that McIntosh was able to file numerous grievances regarding his medical care at EKCC shortly after the events about which he complains undercuts any assertion that such forms were categorically unavailable or that affirmative efforts were made to impede his ability to pursue administrative remedies. McIntosh therefore failed to satisfy the federally-mandated exhaustion requirement set forth in 42 U.S.C. § 1997e(a), and Officer Dingus is entitled to judgment as a matter of law.

Accordingly, **IT IS ORDERED** that:

1. Officer Jonathan Dingus' Motion for Summary Judgment [D. E. No. 12] is **GRANTED**.

2. The Complaint filed by plaintiff Carlton E. McIntosh, Sr. [D. E. No. 1] is **DISMISSED**.

3. The Court will enter an appropriate judgment.

4. This matter shall be **STRICKEN** from the active docket.

This 21st day of November, 2016.



Signed By:
Henry R. Wilholt, Jr.
United States District Judge